**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN  DIVISION**

| | |
|---|---|
| ALBERTA WEBB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| LAW OFFICE OF IRA T. NEVEL LLC; | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

## INTRODUCTION

1.      Plaintiff Alberta Webb brings this action to secure redress from unlawful collection practices engaged in by defendant Law Office of Ira T. Nevel LLC ("Nevel"). Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

## VENUE AND JURISDICTION

2.      This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28  U.S.C. §§1331 (general federal question), 1337 (interstate commerce), and 1367 (supplemental jurisdiction).

3.      Venue and personal jurisdiction in this District are proper because:

   a.      Defendant is located in or does or transacts business within this District;

   b.      Defendant's conduct impacted plaintiff within the District; and

   c.      The case involves real estate located within this District.

## PARTIES

4.      Plaintiff Alberta Webb is a resident of the Northern District of Illinois.

5.      Defendant Nevel is a law firm organized as an Illinois limited liability company with offices at 175 N. Franklin St., Suite 201, Chicago, IL 60606-1847.

6.      The practice of Nevel consists almost entirely of collecting residential mortgage debts.  Nevel uses the mails and telephone system in connection with such activities.

1

7. Nevel states on its web site that "Lawyers at our Chicago law firm have been representing lenders in foreclosures and protecting the rights of creditors for over 32 years." (http://www.nevellaw.com/)

8. Nevel is a debt collector as defined in the FDCPA.

## FACTS

9. Alberta Webb is the sister of Joe Grant, Jr., deceased.

10. On September 11, 2002, Joe Grant, Jr. obtained a $21,900 mortgage loan from GSF Mortgage Corporation secured by the property at 5421 W. Crystal St., Chicago, IL 60651 (the "Property"), a single family home which he owned and in which he resided with his immediate family.

11. The loan was obtained for personal, family, or household purposes and not for business purposes.

12. On September 13, 2002, Joe Grant, Jr., quitclaimed the Property to himself and Alberta Webb as a joint tenancy with rights of survivorship.

13. Joe Grant Jr. and members of his family continued living in the property.

14. On October 16, 2013, Joe Grant, Jr. died, leaving Alberta Webb as sole owner of the Property. The property continued to be occupied by members of Mr. Grant's family, not including Alberta Webb.

15. Under the Garn-St. Germain Act, 12 U.S.C. §1701j–3, the transfer of the property to Alberta Webb upon the death of her brother and joint tenant Joe Grant, Jr. did not constitute an act of default under the note and mortgage.

16. 12 U.S.C. §1701j–3(d) provides:

**Exemption of specified transfers or dispositions**

**With respect to a real property loan secured by a lien on residential real property containing less than five dwelling units, including a lien on the stock allocated to a dwelling unit in a cooperative housing corporation, or on a residential manufactured home, a lender may not exercise its option pursuant to a due-on-sale clause upon—**

2

> **. . . (3) a transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety;**
>
> **(5) a transfer to a relative resulting from the death of a borrower; . . .**

17.    On May 14, 2014, CitiMortgage, Inc., represented by Nevel, filed a mortgage foreclosure action alleging default in payments as of November 1, 2013.   A copy of the complaint and summons is attached as <u>Appendix A</u>.

18.    The summons and complaint purports to include the notice required by 15 U.S.C. §1692g.

19.    The notice of debt included in the summons and complaint:

   a.    Provides an incorrect number for the amount of the debt; and

   b.    Requires a written dispute, which is not required by §1692g.

20.    The amount of the default was listed as "principal $6,031.64" as of May 5, 2014, with a per diem of $0.97.  Accrued interest and escrow advances were not listed.

21.    Named as defendants were Joe Grant, Jr. (who had been deceased for seven months), and Alberta Webb, along with unknown tenants, unknown owners, and non-record claimants.

22.    On May 30, 2014, Nevel filed a return of service (<u>Appendix B</u>) purporting to state that Joe Grant, Jr., had been served by leaving a copy of the summons and complaint with Alberta Webb at 5421 W. Crystal, Chicago, Illinois, on May 27, 2014.

23.    On May 30, 2014, Nevel filed a return of service (<u>Appendix C</u>) purporting to state that Alberta Webb had been personally served at 5421 W. Crystal, Chicago, Illinois, on May 27, 2014.

24.    In both returns, Alberta Webb was described as a female, black, weighing 170 pounds.

25.    Alberta Webb, in fact, weighs 350 pounds and had not been served.

26.    Alberta Webb learned of the lawsuit and retained counsel, who sent Nevel the letter attached as <u>Appendix D</u> on or about June 9, 2014.

27.     Alberta Webb listed the property for sale.

28.     Although Ms. Webb was not personally liable on the note, the value of the

property substantially exceeded the loan, so that she was likely to suffer substantial pecuniary

loss if the property was foreclosed upon.

29.     On June 19, 2014, Nevel LLC filed a motion for leave to file an amended

complaint and appoint a special representative for the late Joe Grant, Jr.  (Appendix E)

30.     Appointment of a special representative was not necessary because the property

had been held in joint tenancy with right of survivorship, so that upon the death of Joe Grant, Jr.

Alberta Webb became the sole owner.

31.     735 ILCS 5/15-1501(h) provides:

**(h) Special Representatives. The court is not required to appoint a special
representative for a deceased mortgagor for the purpose of defending the action, if
there is a living person that holds a 100% interest in the property that is the subject
of the action, by virtue of being the deceased mortgagor's surviving joint tenant or
surviving tenant by the entirety. . . .**

32.     On June 20, 2014, counsel for Alberta Webb sent Nevel the letter attached as

Appendix F.

33.     On June 20, 2014, Nevel sent Ms. Webb's counsel a payoff letter (Appendix G)

34.     The payoff letter demanded $3881.00 in attorney's fees and costs.

35.     The $3881.00 demanded was broken down in Appendix H.

36.     The amount included:

    a.      Amounts for falsified service;

    b.      Amounts for the unnecessary amendment to name a special representative

        and appoint one; and

    c.      Minutes of foreclosure ("title commitment") in excess of the normal and

        reasonable amount for same.

37.     On July 24, 2014, Alberta Webb filed a motion to quash service.  (Appendix I)

38.     On August 1, 2014, Nevel filed a response (Appendix J) asserting that the return

4

of service was correct.

39.     On August 4, 2014, counsel for Ms. Webb sent Nevel a letter (Appendix K) pointing out the problem with the description.

40.     Ms. Webb found a buyer, sold the property for $40,000, and paid off the loan.

41.     In order to consummate the sale within the time required by the buyer, Ms. Webb was forced to pay the $5038 in attorney's fees and costs Nevel demanded.

42.     The $5038 included the amounts described above and amounts for defending the falsified return of service, and was grossly unreasonable.

43.     The foreclosure was dismissed on December 18, 2014.  (Appendix L)

## COUNT I – FDCPA

44.     Plaintiff incorporates paragraphs 1-43.

45.     Defendant violated 15 U.S.C. §1692g, by failing to accurately state the amount of the debt.

46.     Defendant violated 15 U.S.C. §1692e and 1692f, by:

    a.     Falsely representing that Ms. Webb had been served;

    b.     Failing to accurately state the amount of the debt; and

    c.     Charging improper fees and costs.

47.     Section 1692g provides:

**§ 1692g.  Validation of debts**

**(a) Notice of debt; contents.  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--**

**(1) the amount of the debt;**

**(2) the name of the creditor to whom the debt is owed;**

**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**

5

**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**

**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

**(b) Disputed debts.  If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.**

**(c) Admission of liability.  The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.**

**(d) Legal pleadings.  A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).**

**(e) Notice provisions.  The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986 [*26 USCS §§ 1* et seq.], title V of Gramm-Leach-Bliley Act [*15 USCS §§ 6801* et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.**

48.  Section 1692e provides:

**§ 1692e.  False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without**

limiting the general application of the foregoing, the following conduct is a violation
of this section: . . .

**(2)     The false representation of--**

    **(A)     the character, amount, or legal status of any debt; or**

    **(B)     any services rendered or compensation which may be lawfully received
by any debt collector for the collection of a debt. . . .**

**(10)     The use of any false representation or deceptive means to collect or attempt to
collect any debt or to obtain information concerning a consumer. . . .**

WHEREFORE, the Court should enter judgment in favor of plaintiff and against

defendant for:

    i.    Statutory damages;

    ii.    Actual damages;

    iii.    Attorney's fees, litigation expenses and costs of suit; and

    iv.     Such other and further relief as the Court deems proper.

    /s/Daniel A. Edelman
    Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

T:\30937\Pleading\Complaint_Pleading.wpd

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


/s/Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## <u>DOCUMENT PRESERVATION DEMAND</u>

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

<u>/s/Daniel A. Edelman</u>
Daniel A. Edelman