**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALBERTA WEBB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 01087 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| LAW OFFICE OF IRA T. NEVEL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The Complaint in this case alleges that the defendant, Law Office of Ira T. Nevel, LLC ("Nevel"), violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, during the pursuit of a state-court mortgage foreclosure action involving a property owned by the plaintiff, Alberta Webb. Nevel moves to dismiss all claims. Mot. Dismiss, ECF No. 16. For the reasons set forth below, the motion is granted in part and denied in part.

**BACKGROUND**[1]

On September 11, 2002, Joe Grant, Jr. (the plaintiff's brother) obtained a $21,900 mortgage from GSF Mortgage Corporation, secured by a single-family home located at 5421 W. Crystal Street in Chicago (the "property"). Compl. ¶¶ 9-10, ECF No. 1. On September 13, 2002, Grant quitclaimed the property to himself and Webb as joint tenants with a right of survivorship. *Id.* ¶ 12. Grant lived in the home with his immediate family. *Id.* ¶ 10. On October 16, 2013, Grant died, leaving Webb as the sole owner of the property; Grant's immediate family, not including Webb, continued to reside in the home. *Id.* ¶ 14.

---

[1] As this is a motion to dismiss, the Court accepts all well-pleaded facts as true and construes all inferences in favor of the plaintiff. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012).

On May 14, 2014, Nevel filed a mortgage foreclosure action in the Circuit Court of Cook County on behalf of CitiMortgage, Inc., alleging default of payment as of November 1, 2013. The foreclosure action named as defendants Grant, Webb, and other unknown tenants/owners and non-record claimants. *Id*. ¶ 21. The summons and complaint include a page entitled, "Notice Required by the Fair Debt Collection Practices Act." *Id*. Ex. A 9 (capitalization altered). In reference to the amount of the debt, the FDCPA notice page refers to the amount included in the attached mortgage foreclosure complaint. *Id*. The attached complaint lists the principal amount of the debt as $6,031.64, with a per diem interest of $0.97. *Id*. 12 ¶ (j); Compl. ¶ 20.

On May 30, 2014, Nevel filed returns of service stating that Grant (who had died eight months earlier) had been served by leaving a copy of the summons and complaint with his "Co-Occupant" Webb at the property on May 27, 2014, and that Webb had been served personally at the property as well.[2] *Id*. ¶¶ 22-23. Both returns described Webb as a black female weighing 170 pounds; Webb actually weighs 350 pounds. *Id*. ¶¶ 24-25. Webb learned of the lawsuit (the Complaint does not state how) and retained counsel, who informed Nevel of Grant's death and requested a payoff letter within 14 days of June 9, 2014. *Id*. ¶ 26; Ex. D. On June 19, 2014, Nevel then filed a motion to amend the mortgage foreclosure complaint and to appoint a special representative for Grant, pursuant to 735 ILCS 5/13-209(b). Compl. ¶ 29; Ex. E. Webb's counsel sent a letter to Nevel on June 20, 2014, stating that Webb had not been served personally and requesting validation of the debt. Compl. ¶ 32; Ex. F. That same day, Nevel sent Webb's counsel a payoff letter breaking down the amount due into unpaid principal balance, interest, escrow advances, release fee, and attorney's fees and costs. Compl. ¶ 33; Ex. G. The $3,881 in attorney's fees and costs included, among other things, charges for service of process, for title

---

[2] Nevel disputes the allegation that it filed the returns of service but recognizes that the Court must treat the allegation as true for purposes of this motion. *See* Mot. Dismiss ¶ 6 n.1.

commitment, and to amend the complaint and name a special representative. Compl. ¶ 36; Ex. H. On July 24, 2014, Webb filed a motion to quash service. Compl. ¶ 37. Nevel opposed the motion, responding that its "duly appointed process server personally served [Webb] . . . ." *Id*. Ex. J; Compl. ¶ 38. Webb's counsel notified Nevel of the problem with the description in the affidavit of service on August 4, 2014. *Id*. ¶ 39; Ex. K.

Webb acknowledges that she was not personally liable on the note, but asserts that because the value of the property exceeded the amount of the loan, she was likely to suffer "substantial pecuniary loss" if the mortgage were foreclosed (presumably because foreclosure sales often occur at below-market prices). *Id*. ¶ 28. Instead, Webb listed the property for sale, sold it for $40,000, and paid off the loan. *Id*. ¶ 40. Webb asserts that, in order to consummate the sale, she "was forced" to pay the attorney's fees and costs that Nevel demanded (totaling $5,038), which included the costs of responding to the motion to quash service. *Id*. ¶¶ 41-42. The foreclosure action was dismissed with prejudice on December 18, 2014. *Id*. ¶ 43; Ex. L. Webb filed this action on February 3, 2015, alleging that Nevel violated §§ 1692e, 1692f, and 1692g of the FDCPA by failing to state accurately the amount of the debt. The complaint also alleges that Nevel violated §§ 1692e and 1692f by falsely representing that Webb had been served and by charging improper fees and costs. Nevel moves to dismiss the Complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**DISCUSSION**

To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). The plaintiff must plead sufficient factual content from which the Court can "draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must construe all allegations in

the light most favorable to the plaintiff, accept all well-pleaded facts set forth in the complaint as

true, and draw all inferences in favor of the non-moving party. *Fednav Int'l Ltd. v. Continental

Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). Allegations in the form of legal conclusions, as well

as threadbare recitals of the elements of a cause of action, supported by conclusory statements,

do not suffice. *Adams*, 742 F.3d at 728.

## I.    The Alleged Failure to State the Amount of the Debt

Webb contends that the FDCPA notice included with the summons and complaint failed

to state accurately the full amount of the debt and therefore violated § 1692g of the FDCPA.

Alternatively, she argues that the notice violated § 1692e's proscription of "false, deceptive, or

misleading" statements in connection with debt collection activities. Although the Court agrees

with Nevel's contention that Webb cannot state a claim under § 1692g because she is not a

"consumer" as defined by the FDCPA, his invocation of state court pleading rules does not

immunize the contents of his FDCPA notice from liability under § 1692e.

### A.    Section 1692g

Section 1692g of the FDCPA specifies the timing and contents of the required written

notice to a consumer by a debt collector: "Within five days after the initial communication with a

consumer in connection with the collection of any debt, a debt collector shall, unless the

following information is contained in the initial communication or the consumer has paid the

debt, send the consumer a written notice containing" a variety of information, including the

amount of the debt. 15 U.S.C. § 1692g(a).[3] In *Miller v. McCalla, Raymer, Padrick, Cobb,*

---

[3] Subsection (d) of § 1692g explicitly excludes legal pleadings in a civil action from
inclusion as an "initial communication" that triggers the obligation to provide written notice
under (a). Nevel's argument that this provision relates to the notice provided with the summons

*Nichols, and Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000), the Seventh Circuit held that the notice required by § 1692g includes a statement of the full amount of the debt, and rejected the contention that notice of the principal due was sufficient to comply with this provision. *Id*. at 875-76.

The requirements of this section, however, only apply to communications with "consumers," whereas various other provisions of the FDCPA apply more broadly. *Compare, e.g.,* § 1692g(a) ("Within five days after the initial communication **with a consumer** . . ." (emphasis added)), *with* § 1692k(a) (referencing debt collection action "with respect to **any person**" (emphasis added)). Nevel argues that Webb is not a consumer as defined under the FDCPA and, therefore, cannot invoke the protections of § 1692g.

The FDCPA defines consumer as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a. The Seventh Circuit has stated that "each provision of the FDCPA must be analyzed individually to determine who falls within the scope of its protection and thus to decide 'with respect to' whom the provision can be violated." *Todd v. Collecto, Inc.*, 731 F.3d 734, 738 (7th Cir. 2013). In *Todd*, the Seventh Circuit compared § 1692b, which protects "only [ ] the consumer who supposedly owes the debt," with § 1692f, which "includes a general prohibition on unfair and unconscionable debt collection practices." 731 F.3d at 738. The court held that the debtor's son did not have standing to sue under § 1692b because the provision

---

and complaint in the foreclosure action, however, is off-base. Based on subsection (d), the filing of the foreclosure complaint did not constitute an initial communication about a debt, so Nevel was not required to provide a § 1692g notice within five days of that filing. Nevel nevertheless included "Notice Required by the Fair Debt Collection Practices Act" with the summons and complaint. That Notice was either (1) not exempted by subsection (d) (since it was not part of the complaint) and therefore triggered Nevel's obligation to provide the information required by § 1692g within five days; or (2) constituted putative § 1692g notice itself. In either case, Webb's claim that Nevel failed to provide notice of the full amount of the debt would remain, so subsection (d) provides no haven for Nevel.

was not designed to protect non-consumers, whereas § 1692f was designed to protect any person who experienced unconscionable acts associated with debt collection. *Id*. at 738-39.

As noted, § 1692g, like § 1692b, applies only to "consumers" and, therefore, protects only those who supposedly owe the debt. *See Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773 (7th Cir. 2007) (defining "consumer" as "the person claimed to owe a debt"). Webb admits in the Complaint that she "was not personally liable on the note." Compl. ¶ 28. She argues, however, that "obligated" as included in the FDCPA definition of consumer does not mean "personally obligated," and compares her situation to nonrecourse transactions under other titles of the Consumer Credit Protection Act. *See* Resp. 7-8, ECF No. 22; Mot. Add'l Auth. 1-3, ECF No. 27. Webb asserts, without authority other than her *ipse dixit,* that when the value of collateral exceeds the debt, "there is a very real 'obligation' to pay it." Resp. 8. Webb's contention, however, conflates a legal obligation—a "formal, binding agreement or acknowledgment of a liability to pay a certain amount," Black's Law Dictionary, Obligation (10th ed. 2014), with the practical realities of her situation—namely, that she needed to pay off the debt in order to preserve her equity in the property.

Webb's frustration is understandable; the property she owned was worth significantly more than the amount of the debt. But rather than fight the foreclosure action, she chose to sell the property, and as part of that sale, she paid the entirety of the outstanding balance of the debt (presumably because she could not have found a buyer without a clear title). To pay off the lien to close the sale was a choice Webb made; she was not legally required to pay the lien and admits as much. She cannot now seek the protections of § 1692g when she had no legal obligation to pay the debt and did so because she concluded that payment of the lien and closure of the sale was in her financial best interest. Webb's position is akin to that of the plaintiff in

6

*Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13 (1st Cir. 2002), who opted to pay a secured party rather than surrendering designated collateral. Noting that "none of the facts set forth in the complaint support an inference that the [plaintiffs] were obligated to pay any money to Sears," *id.* at 23, so the Court concluded that their claim did not involve a "debt" as defined by the Act. The most that could be said, the court explained, is that the plaintiffs "faced an unhappy choice in these transactions, not an obligation to pay money." *Id.* at 24. The court therefore affirmed the dismissal of their FDCPA claim under § 1692g. *Id.* at 23 ("to allow these allegations to trigger the FDCPA would require us to read the word 'obligation' out of the statute"). *See also, e.g., Christy v. EOS CCA*, 905 F. Supp. 2d 648, 653 (E.D. Pa. 2012) (concluding that plaintiff was not a consumer under the FDCPA because he was not personally obligated to pay his adult son's debt).[4]

In short: because Webb did not owe a debt, she is not a "consumer" under the FDCPA, and she has failed to state a claim under § 1692g. The motion to dismiss is granted with prejudice as to the claims under § 1692g.

### B.    Section 1692e

Webb also alleges that the notice of debt included in the mortgage foreclosure complaint violated § 1692e because it inaccurately stated the amount of the debt. Compl. ¶ 46. Section 1692e prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt," including the false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2). It is important to understand,

---

[4] This conclusion does not create the "loophole" Webb warns of with respect to secured debts. Resp. 8. While it is true that a "debt is still a 'debt' even if it is secured," that in no way conflicts with the requirement that a person be legally obligated to pay the debt to be considered the debtor. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218 (11th Cir. 2012) (concluding that letters attempting to enforce a security interest were also attempts to collect on the underlying debt and, thus, actionable under § 1692e).

however, that Webb does not assert that the complaint falsely stated the amount of the principal owed, or included any other false statement; rather, she maintains that the foreclosure complaint's statement of the debt was not "accurate" because, in addition to the principal owed and the per diem interest accruing, it did not also set forth the total amount of the debt, including accrued interest and escrow advances. *See* Resp. 2-3; Compl. ¶¶ 19, 46.

Nevel counters that the mortgage foreclosure complaint complied with the form complaint proposed in the Illinois Mortgage Foreclosure Law ("IMFL"), 735 ILCS 5/15-101 *et seq*., and, thus, does not violate § 1692e.[5] Subsection (3)(J) of 735 ILCS 5/15-1504(a) authorizes a plaintiff to include the "date of default, current unpaid principal balance, per diem interest accruing, and any further information concerning the default." Nevel maintains that "a finding that the complaint in the foreclosure proceeding violated § 1692e would require the Court to find that the FDCPA controls over state statutes and enables claims based on pleadings in state court actions that adhere to all applicable pleading requirements." Mot. Dismiss ¶ 10.

Unquestionably, there can be tension between state court procedural rules and the requirements of the FDCPA. Although the Seventh Circuit has not directly addressed inconsistencies between state-law pleading requirements and the FDCPA, it has strongly suggested that "the state's rules of procedure, not federal law" govern the contents of state court pleadings and the litigation process. *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007) (discussing applicability of § 1692e). Indeed, in the context of a claim that following an authorized state procedure was "unfair" or "unconscionable" under § 1692f, *Beler* expressly rejected the proposition that the similarly "ambulatory language" of

---

[5] Webb erroneously asserts in her response that Nevel does not address the allegation that the notice of debt violates § 1692e. *See* Resp. 10. Not so. Nevel makes such an argument in its motion to dismiss at ¶¶ 10-11 and then again in its reply at ¶ 7, ECF No. 23.

another FDCPA section, § 1692f, gives federal judges license "to displace decisions consciously made by state legislatures and courts about how judgment creditors collect judgments entered under state law." *Id.* at 475. It is difficult to see why § 1692e's similarly broad proscription of the use of any "misleading" language in connection with the collection of a debt should authorize federal courts to review and rewrite state pleading rules in foreclosure actions.

In this case, however, the conflict that Nevel raises is illusory. Webb's claim is not based on the content of the foreclosure complaint but rather on the content of the putative "Notice Required by the Fair Debt Collection Practices Act" that Nevel chose to provide ***in addition to*** the foreclosure complaint. Webb argues that Nevel violated the FDCPA not by failing to set forth the total amount of the debt in the foreclosure complaint but by failing to do so in the attached Notice. That claim does not implicate the validity of state court pleading rules in any way; those rules did not require Nevel to include an FDCPA notice with the foreclosure complaint. Had Nevel opted not to include an FDCPA notice with the summons and complaint, Webb would have no claim that the foreclosure complaint itself violated the FDCPA notice provisions. That it chose to include an FDCPA notice with the foreclosure complaint, however, does not immunize the contents of the Notice provided. State court pleading rules have no more to do with the Notice Nevel provided with the foreclosure complaint than they would if Nevel had mailed the FDCPA notice under separate cover. Accordingly, the state pleading rules provide no refuge for Nevel.

Nevel offers no other argument to support dismissal of the § 1692e theory as it relates to the allegedly inaccurate statement of the amount of the debt.[6] Accordingly, that theory survives.

---

[6] Nevel does not assert (and therefore has waived) any argument that the statement concerning the amount of the debt is not "false, deceptive, or misleading," even though it does not state (or purport to state) the full amount of the debt. Nor does it contend that Webb cannot

### III.    The Alleged False Representations of Service

Webb also claims that Nevel violated §§ 1692e and 1692f by falsely representing that she

had been served in the mortgage foreclosure action. Nevel argues that, assuming the returns of

service are false, they cannot form the basis of a claim under § 1692e because the returns did not

mislead her in any way and that they cannot form the basis of a claim under § 1692f because that

section is not an enforcement mechanism for state rules. The Court agrees with Nevel.

### A.    Section 1692e

With respect to the allegedly false returns of service, Webb acknowledges the Seventh

Circuit holding that representations made solely to a state court are not covered by the FDCPA.

Resp. 10 (citing *O'Rourke,* 635 F.3d at 944 ("[T]he Fair Debt Collection Practices Act does not

extend to communications that would confuse or mislead a state court judge.")). She cites an

amicus brief that the Consumer Financial Protection Bureau and the Federal Trade Commission

filed in a recent Second Circuit case as support for this Court to reconsider the Seventh Circuit's

ruling. Resp. 10 (citing http://files.consumerfinance.gov/f/201311_cfpb_amicus-brief_sykes.pdf

(arguing that fraudulent affidavits of service—*i.e.,* "sewer service"—violate the FDCPA)).

Unless and until the Seventh Circuit reconsiders its holding in *O'Rourke* that representations

---

assert a claim under § 1692e because, like § 1692g, the provision applies only to false statements
directed at consumers (Nevel does, however, make a similar, but more limited, argument in the
context of the representation relating to service of the foreclosure complaint, which is discussed
below). In *O'Rourke v. Palisades Acquisition XVI, LLC*, the Seventh Circuit rejected a § 1692e
claim based on an alleged false statement that was not made to a consumer, unequivocally
holding that "we read the [FDCPA's] protections as extending to consumers and those who stand
in the consumer's shoes and no others." 635 F.3d 938, 943-44 (7th Cir. 2011) (affirming
summary judgement on § 1692e claim). Two years later, however, another panel of the Court
stated that "*O'Rourke* should not be read to foreclose all FDCPA claims by persons other than
consumers and their proxies." *Todd*, 731 F.3d at 737 (holding that § 1692f applies to "anyone
aggrieved by a debt collector's unfair or unconscionable collection practices"). The import of
*Todd*'s attempt to narrow *O'Rourke*'s unequivocal statement is not clear (*Todd* was not
circulated to the entire Court pursuant to Circuit Rule 40(e)), but Nevel has not argued the point,
so it is unnecessary in this case to try to reconcile these two opinions.

made to a state court judge are not actionable under the FDCPA, that is the controlling law in this Circuit.

Moreover, Webb does not argue that the returns of service were intended to deceive her or actually did so; plainly they didn't, as she contested their authenticity in the state court proceeding by filing the motion to quash service. *See* Compl. Ex. I. She does, however, claim that she was charged for the cost of the allegedly false returns of service. The propriety of charges associated with service is a separate issue from whether the allegedly fraudulent service, itself, violates § 1692e. Because false representations made to a state court are not actionable under the FDCPA and because Webb does not claim that the returns deceived or were intended to deceive her, she has failed to state a claim under § 1692e based upon the allegedly false representations of service.[7] The motion to dismiss is granted with prejudice as to this claim.

---

[7] Although the FDCPA is a strict liability statute, not every false statement (as opposed to deceptive or misleading statement) automatically violates the FDCPA:

> If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA-even if it is false in some technical sense. For purposes of § 1692e, then, a statement isn't "false" unless it would confuse the unsophisticated consumer. *See Turner [v. J.V.D.B. & Assoc.],* 330 F.3d [991, 995 (7th Cir. 2003)] ("[O]ur test for determining whether a debt collector violated § 1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer."). So, while the FDCPA is a strict liability statute-a collector "need not be deliberate, reckless, or even negligent to trigger liability," *Ross v. RJM Acquisitions Funding LLC,* 480 F.3d 493, 495 (7th Cir. 2007), the state of mind of the reasonable debtor is always relevant.

*Wahl v. Midland Credit Management, Inc.,* 556 F.3d 643 (7th Cir. 2009). Thus, whether or not Nevel made any false statements to Webb (as opposed to statements to the state court judge) concerning service, Webb "ha[s] to prove that an unsophisticated consumer would be deceived or misled by them." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009). Because she has not done so, her claim cannot survive on this basis, either.

**B.** **Section 1692f**

Webb's further contention that the returns of service also violated § 1692f, which provides that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," is foreclosed by circuit precedent. "Section 1692f creates its own rules (or authorizes the FTC to do so); it does not so much as hint at being an enforcement mechanism for other rules of state and federal law." *Beler*, 480 F.3d at 474. In *Beler,* the Seventh Circuit stated that, based on the language and structure of § 1692f, "the implication is that state judicial proceedings are outside the scope of § 1692f." *Beler*, 480 F.3d at 475; *see also Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 875 (7th Cir. 2015) (agreeing with *Beler* that "[t]he FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law."). Webb's claim that the allegedly fraudulent returns of service violated § 1692f is an attempt to use the FDCPA to enforce state-court rules governing service of process. *Beler*, however, warns against attempts to "piggyback" a claim under § 1692f onto existing state rules of procedure: "Section 1692f does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $75,000 and the parties are not of diverse citizenship." 480 F.3d at 474. Thus, Webb has failed to state a claim under § 1692f with respect to the returns of service, and the motion to dismiss is granted with prejudice as to this claim.

## IV. Charging Improper Fees and Costs

Webb's final claims are that Nevel charged her improper fees and costs, in violation of §§ 1692e and 1692f. She alleges that the $5,038 she paid in costs and fees includes unnecessary amounts to name a special representative, amounts related to the allegedly falsified service, and excessive amounts for minutes of foreclosure. Nevel states that the mortgage and note authorize

court costs and reasonable attorney's fees;[8] it argues that because Webb did not contest the reasonableness of the amount or attempt to negotiate the costs and fees before paying them, she has waived the ability to do so.

The parties dispute the propriety of Nevel's motion to appoint a special representative and the costs associated with such action. Nevel asserts that Illinois Supreme Court Rule 113(i) requires the appointment of a special representative if the mortgagor is deceased: "In all mortgage foreclosure cases where the mortgagor or mortgagors is or are deceased, and no estate has been opened for the deceased mortgagor(s), the court shall, on motion of a party, appoint a special representative to stand in the place of the deceased mortgagor." ILCS S. Ct. R. 113(i). Webb points out that the comments to this subsection note that it was enacted in response to *ABN Amro Mortgage Group, Inc. v. McGahan*, 931 N.E.2d 1190 (Ill. 2010), which held that "a mortgagee must name a personal representative for a deceased mortgagor in a mortgage foreclosure proceeding in order for the circuit court to acquire subject matter jurisdiction." *Id*. at 1192. The comments to Rule 113(i) note that this issue "ha[s] not been specifically addressed by remedial legislation." ILCS S. Ct. R. 113 cmt. The Illinois legislature responded to the Illinois Supreme Court's comment, however, by enacting 735 ILCS 5/15-1501(h):[9] "The court is not

---

[8] The copy of the mortgage attached to the Complaint is nearly illegible, so the Court is unable to discern its specific contents. *See* Compl. Ex. A. Webb, however, does not contest that the mortgage and note authorize reasonable fees and costs.

[9] Nevel asserts that the conflict between the statute and the Illinois Supreme Court Rule must be resolved in favor of the Rule. *See People v. Joseph*, 495 N.E.2d 501, 506 (Ill. 1986) ("[I]f a statute conflicts with a rule of this court adopted pursuant to constitutional authority, the rule will prevail."); *see also Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 336, 770 N.E.2d 177, 185 (Ill. 2002) ("[J]urisdiction of the circuit court is conferred by the constitution, not the legislature. Only in the area of administrative review is the court's power to adjudicate controlled by the legislature."). When the Illinois Supreme Court invites the legislature to address a particular issue in the comments to that Rule, however, it rebuts the presumption of resolving the conflict in favor of the Rule. It seems to this Court that, in this instance, the later-enacted statute prevails. *Cf. In re Allen*, 183 B.R. 519, 530 (Bankr. N.D. Ill. 1994) ("[T]o the

required to appoint a special representative for a deceased mortgagor . . . if there is a living person that holds a 100% interest in the property that is the subject of the action, by virtue of being the deceased mortgagor's surviving joint tenant . . . ." That is exactly the case here: Webb held a 100% interest in the property as the surviving joint tenant and, thus, the court was not required to appoint a special representative.

Based on the statutory language, the appointment of a special representative was not necessary and, therefore, it cannot be said that charging Webb for related work was authorized under the mortgage and note. Sections 1692e and 1692f prohibit an attempt to collect for services not authorized or lawfully rendered. *See* 15 U.S.C. §§ 1692e (unlawful to falsely represent "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt"), 1692f (unlawful to collect "any amount . . . unless such amount is expressly authorized by the agreement creating the debt").

Because Webb has alleged that Nevel charged her for unnecessary and, thus, unauthorized legal work, Webb has stated a claim under §§ 1692e and 1692f for the charge of improper fees and costs. *See Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1113 (7th Cir. 2008) (FDCPA violation to charge collection fees not specifically authorized under contract); *Day v. Check Brokerage Corp.*, 511 F. Supp. 2d 950, 955 n.2 (N.D. Ill. 2007) (violation of § 1692e to charge legally unauthorized filing and service fees and attorney's fees); *see also White v. Fein, Such & Crane, LLP*, No. 15-CV-438-JTC, 2015 WL 6455142, at *5 (W.D.N.Y. Oct. 26, 2015) ("[T]o the extent that the fees sought are unreasonable, exceed the customary cost for such work, or represent amounts for work not actually performed, they are not 'permitted by law' and the attempt to collect such fees would constitute the violation of section 1692f(1) of the FDCPA.").

---

extent that the two statutes may conflict, this court will adhere to the general rule of following the statute enacted last in time, as that is the most recent expression of the legislature's will.").

The Court need not address the arguments related to the additional challenged fees and costs, as that merely goes to the amount of damages rather than the validity of the claim. The motion to dismiss is denied as to these claims.

*     *     *

The motion to dismiss is granted with prejudice as to the claim under § 1692g and as to the claims under §§ 1692e and 1692f based upon the allegedly false representations of service. The motion to dismiss is denied as to the accuracy of the statement of the amount of the debt under § 1692e and as to the allegedly improper charges under §§ 1692e and 1692f.

Dated: March 14, 2016

John J. Tharp, Jr.
United States District Judge